## Case No. 13,631.

### The SUSAN.

### [3 Ware, 222.] [1]

### District Court. D. Maine. April 6, 1859.

SEAMEN—WAGES—WHEN PAYABLE—WHEN SUIT MAY BE BROUGHT—TEN DAYS' LIMIT—SUITS IN REM—IN PERSONAM.

1. A seaman is entitled to his wages as soon as he has completed his contract and is discharged from the vessel.

2. The provision in the seaman act of 1790 [1 Stat. 131], that process shall not issue against the vessel until ten days after the vessel has arrived at her last port of discharge, except under certain contingencies, does not suspend the right to a personal suit, either in the admiralty or at common law, until after the expiration of that time.

3. The admiralty has a general discretionary power over costs. and when a seaman has a just cause of complaint it will deny him costs, unless he allows to the master and owners a reasonable time for an amicable settlement of the dispute before commencing his libel.

4. Costs in this case allowed on the facts.

Mr. Sawyer, for libellant.

Mr. Hodges, for respondent.

WARE, District Judge. This is a libel in personam by Trott, the mate of the brig Susan. against Drew. the master, for wages. The libellant shipped at Charleston, South Carolina, Feb. 4, 1859, as mate, for wages at $40 per month for a voyage from that port to Boston. The brig arrived in Boston in the evening of the 7th of March, and Trott was discharged and left the brig on the 9th, the period of service being one month and one-seventh of a month, which, at $40 a month, amounts to $46.66, and he had received advance wages to the amount of $20.25, leaving due $26.41. It was not much disputed at the hearing, that the evidence actually in the case. showed a balance of wages to be due. There is, in the answer, a defence set up of misconduct and incapacity, which, if proved, might go to a reduc-

[1] [Reported by George F. Emery, Esq.]

tion of the rate, or an entire forfeiture of wages; and the respondent moved for time to obtain and introduce proof in support of this allegation, but that motion, under the circumstances, was overruled, and there remains no defence against the claim for wages.

But it is objected the suit was prematurely commenced before the time of service was ended and before the libellant was discharged. The deposition of Antonio Garcia, the cook, connected with the answer, sufficiently shows that Trott was discharged, by the master, on the 8th of March. The cook was then discharged and there was no more cooking for the crew, though Trott did not finally leave the brig until the 9th. The master, in his answer, says, that on the 8th he told Trott that his services were no longer required on board, and that if he called on the owners his wages would be paid. The admissions in the answer are evidence to charge the master, though his averments are not evidence in his defence; and this, in connection with the fact that the rations of the crew were then stopped, is sufficient evidence of a discharge. Trott, indeed, according to the answer, said that he would not take his discharge until his wages were paid. But the next day when he found that no provision was made for his board, either in the vessel or on shore, he had a right to discharge himself He may be considered as discharged, so far as the master is concerned, on the 8th, and the wages were then due and payable, and the libel was filed on the 10th. The wages of a seaman are payable of common right as soon as his contract is completely performed, and then the right of action arises. The provision of the seaman act of 1790, that process shall not issue against the vessel until ten days after her arrival at her last port of destination, and the discharge of her cargo has never, that I am aware, been construed as suspending the right of a personal action against the master or owner until after the expiration of that time, either in common law or in the admiralty. My opinion is, that there was a legal right of action when the libel was filed.

It is then contended that, if the legal objection to the suit be overcome, it was hastily and vexatiously commenced, without allowing the master and owners a reasonable time to compromise and settle the dispute, and that, therefore, no cost ought to be allowed. That there was a dispute about the wages, is amply shown by the answer. That is framed with a view to a defence against the entire claim. The admiralty has a general discretionary power over the matter of costs, and it is its habit to exercise this power for the purpose of checking vexatious litigation. It exercises liberally a large discretionary power for the protection of seamen against undue advantages attempted to be taken by masters and owners. But it will not allow this protecting shield to be turned into a weapon of offence. If a controversy arises and a seaman has a just cause of complaint, it requires of him a reasonable moderation in enforcing his rights by legal process. If in a revengeful and litigious spirit, he runs with hot haste to commence a suit without allowing a reasonable time for an amicable settlement of the controversy, the court will mark its sense of his conduct by a denial of costs. But I do not think this can be fairly charged on the libellant in this case. He had been discharged from the ship, and at that time he claimed his wages: his rations were stopped and he was thrown on his own resources for the expense of board; there was evidently an ill feeling between the parties and it is equally evident that there was a controversy about the amount at last due. He waited two days before commencing a suit, living at his own expense. In cases of seamen, a delay of payment practically amounts to nearly a denial of payment. My opinion is that Trott is justly entitled to costs.